COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Humphreys and Friedman
Argued at Lexington, Virginia

JAMIL YASIN FATE

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1203-21-3                      JUDGE ROBERT J. HUMPHREYS
                                                    JULY 19, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James J. Reynolds, Judge

Brooke Carroll, Assistant Public Defender (Joseph H. M. Schenk, Jr.,
Public Defender, on brief), for appellant.

Timothy J. Huffstutter, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Jamil Yasin Fate appeals his convictions for strangulation, in violation of Code

§ 18.2-51.6, assault and battery against a family or household member, in violation of Code

§ 18.2-57.2, possession of a firearm by a convicted felon, in violation of Code § 18.2-308.2, and

possession of ammunition by a convicted felon, in violation of Code § 18.2-308.2.  Fate

challenges the sufficiency of the evidence supporting these convictions.

                                    BACKGROUND

"On appeal, we review the evidence in the 'light most favorable' to the Commonwealth,

the prevailing party in the trial court." *Yerling v. Commonwealth*, 71 Va. App. 527, 530 (2020)

(quoting *Vasquez v. Commonwealth*, 291 Va. 232, 236 (2016)).  This standard requires us to

"discard the evidence of the accused in conflict with that of the Commonwealth, and regard as

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn [from that evidence]." *Bagley v. Commonwealth*, 73 Va. App. 1, 26 (2021) (alteration in original) (quoting *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009)).

At a bench trial, the following evidence was presented.[1]  On August 27, 2020, Fate's wife, Naiesha Fate, emailed a friend, asking her friend to rescue her from Fate.  Naiesha testified that Fate "beat [her] up all the time," did "not allow [her] to have [a] connection to [her] family" or anybody else, and controlled her finances.  Fate was not home that night, but he discovered the email when he came home the next morning.  According to Naiesha, Fate became violent and began yelling and accusing her of "calling the cops" on him.  She testified that he "put his thumb in [her] neck and pushe[d] down and squeeze[d] really hard."  She testified that she couldn't breathe and that when Fate finally let go, she choked while trying to gasp for air.  Although she thought his hands were probably on her for only a few seconds, Naiesha testified that "it felt like forever."  Fate also struck her on the right side of her face.  On cross-examination, Fate asked Naiesha if he pressured her in "the middle of [her] collar bone right below [her] neck"; Naiesha responded, "Correct.  You know how you choked me."

Fate then went to the bathroom and grabbed a 9mm firearm that belonged to Naiesha. Fate cocked the gun and told Naiesha that he was not going back, stating it was "either him going to jail" or her life.

Naiesha ran out of the apartment and fled to a neighbor's apartment.  The neighbor took her in and called the police.  Officer S.A. Eanes of the Danville Police Department arrived and met with Naiesha.  Naiesha's eye was swollen, and she had a mark on the side of her face and bruises around her neck.  She nevertheless told the police that she did not need medical attention. She took out an emergency protective order against Fate that same day and returned home.  She

---

[1] Fate largely represented himself *pro se* at trial with occasional assistance of counsel.

also had her landlord change the locks to the apartment. After police officers arrived, Naiesha realized her firearm was no longer in the apartment and testified that it had not been recovered by the time of the trial.

Fate testified in his own defense, and he stated that Naiesha suffered her injuries in a car accident. He stated that because Naiesha was on probation and the other driver did not have car insurance, they decided not to call the police. Naiesha denied that the car accident occurred.

Fate also testified that he spent the night before the altercation in a hotel room and had an affair with his work supervisor. He stated that Naiesha became violent upon confronting him when he arrived home the following morning, slapping an ash tray in his face, smashing some bottles, and breaking an electronic tablet and his phone. He testified that the last place he had seen the firearm was under a pillow on the bed.

Around 3:00 a.m. the next morning,[2] on August 29, Fate went back to the apartment to "secure [his] belongings." When his key to the apartment did not work, Fate called the police. Officer Brown arrived and witnessed Fate standing outside the apartment next to a car parked in the middle of the road. Fate told Officer Brown that the car belonged to him and Naiesha, but he was the only one who used the car that day. Officer Brown asked Fate if he had a weapon in the car, and Fate answered that he did not have a weapon, but he had ammunition. Officer Brown found .40 caliber ammunition in the passenger's side door pocket and additional ammunition in an empty soda container in the trunk of the car. Fate testified that he did not know about the ammunition or how it got there. The Commonwealth submitted evidence that Fate had a prior felony conviction.

---

[2] The return on the protective order indicates that Officer N.W. Brown of the Danville Police Department served Fate with the protective order in the early morning hours on August 29, 2020.

- 3 -

Fate argued in closing,[3] as relevant here, that (1) Naiesha testified that he placed pressure below her neck and not to her neck as required by the strangulation statute, and (2) the Commonwealth failed to prove that Naiesha's version of events occurred as opposed to Fate's version. Fate stated that he could not deny that ammunition was found in the car but asserted that he would have thrown it away had he known about it.

The circuit court found Fate guilty of possession of ammunition by a convicted felon, assault and battery of a family or household member, strangulation, and possession of a firearm by a convicted felon. Fate filed several post-conviction motions, all of which were denied. This appeal followed.

ANALYSIS

Fate challenges the sufficiency of the evidence supporting his convictions. "On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

---

[3] Following the Commonwealth's case-in-chief, the circuit court struck charges for wearing body armor and for violating a protective order and denied Fate's motion to strike a charge for carrying a concealed weapon stemming from a knife he had on his person on August 29.

I.  The Evidence Regarding Strangulation

Fate first contends that insufficient evidence supports his conviction for strangulation because Naiesha testified on cross-examination that he placed pressure on her collarbone below her neck, rather than on her neck.  Fate argues that the photographs of Naiesha's injuries support his argument.

Code § 18.2-51.6 states, "Any person who, without consent, impedes the blood circulation or respiration of another person by knowingly, intentionally, and unlawfully applying pressure to the neck of such person resulting in the wounding or bodily injury of such person is guilty of strangulation[.]"  Bodily injury under Code § 18.2-51.6 "is any bodily injury whatsoever and includes an act of damage or harm or hurt that relates to the body; is an impairment of a function of a bodily member, organ, or mental faculty; or is an act of impairment of a physical condition."  *Wandemberg v. Commonwealth*, 70 Va. App. 124, 133 (2019); *see also McGowan v. Commonwealth*, 72 Va. App. 513, 520 (2020).

The evidence was sufficient for a reasonable fact finder to conclude that Fate was guilty of strangulation.  Naiesha testified that Fate put his thumb on her neck and squeezed hard enough to restrict her breathing and that she was choking and gasping for air afterward.  Although the photographs are not entirely clear, as evidenced by the parties' disagreement as to the injuries depicted, a reasonable fact finder could conclude that the photographs show discoloration and bruising on Naiesha's neck.  This evidence was sufficient to find Fate guilty of strangulation.

Fate argues that Naiesha's testimony that he applied pressure to her collarbone forecloses the conclusion that he impeded her circulation or respiration by applying pressure to her neck. We disagree.  Naiesha testified that Fate "choked" her, which is consistent with her testimony that his actions impeded her ability to breathe.  Such testimony is more consistent with pressure applied to the neck than with pressure applied to the collarbone.  Moreover, the photographs

submitted by the Commonwealth arguably show injuries to *both* the neck and collarbone area. Naiesha's testimony that Fate placed pressure on her collarbone does not mean that Fate did not *also* place pressure on her neck. Finally, to the extent Naiesha's testimony was inconsistent, such credibility issues are properly resolved by the circuit court, not this Court. *See Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) ("Determining the credibility of witnesses . . . is within the exclusive province of the [fact finder]." (first alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993))). Accordingly, we find that the circuit court did not err, and we affirm Fate's strangulation conviction.

## II. The Evidence Regarding Assault and Battery

Fate next argues that insufficient evidence supports his conviction for assault and battery of a family or household member. He does not dispute that Naiesha qualifies as a family member, nor does he dispute that her version of events, if believed, would prove the elements of the offense. Rather, he contends that the Commonwealth failed to prove that her version of events occurred as opposed to his version.[4]

Code § 18.2-57.2 prohibits assault and battery against a family or household member, including a spouse. *See also* Code § 16.1-228 (defining "family or household member"). "[A] battery is the least touching of another, willfully or in anger, including touching done in the spirit of rudeness or insult." *Marshall v. Commonwealth*, 69 Va. App. 648, 655 (2019) (quoting *Edwards v. Commonwealth*, 65 Va. App. 655, 664 (2015)).

As previously stated, "[d]etermining the credibility of witnesses . . . is within the exclusive province of the [fact finder], which has the unique opportunity to observe the

---

[4] The Commonwealth argues that Fate failed to preserve this argument for review, citing Rule 5A:12(c)(1)(i) and Rule 5A:18. We assume without deciding that Fate's assignment of error challenging the sufficiency of the evidence encompasses the arguments raised in the opening brief and his statement during closing argument regarding the assault and strangulation charges that he "didn't do it" were sufficient to preserve the argument under Rule 5A:18.

demeanor of the witnesses as they testify." *Dalton*, 64 Va. App. at 525 (second alteration in original) (quoting *Lea*, 16 Va. App. at 304). The "conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Ragsdale v. Commonwealth*, 38 Va. App. 421, 429 (2002) (quoting *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

Moreover, "[m]erely because [a] defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded. What weight should be given evidence is a matter for the [factfinder] to decide." *Edwards v. Commonwealth*, 68 Va. App. 284, 301 (2017) (alterations in original) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004)). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)). "When 'credibility issues have been resolved by the [fact finder] in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong.'" *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011) (quoting *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991)). Further, "[a]n appellate court has a 'duty to discard' contested evidence presented by the accused and to 'regard as true' all credible evidence favorable to the

prosecution." *Harper v. Commonwealth*, 49 Va. App. 517, 523 (2007) (quoting *Wright v. Commonwealth*, 196 Va. 132, 137 (1954)).

Here, Fate argues that Naiesha's "testimony was entirely outweighed" by his own testimony. As illustrated by the authorities cited in this section, Fate's argument is foreclosed by law; it was entirely within the province of the circuit court to believe Naiesha's testimony and disbelieve Fate's self-serving testimony. *See Flanagan*, 58 Va. App. at 681. Fate further argues that the photographs of Naiesha's injuries contradict her testimony, but we reject that argument for the reasons stated above. Finally, Fate argues that the Commonwealth did not introduce further evidence to corroborate Naiesha's testimony, but it is well established that "the testimony of a single witness, if found credible by the trial court and not found inherently incredible by this Court, is sufficient to support a conviction." *McCary v. Commonwealth*, 36 Va. App. 27, 41 (2001). Accordingly, we find that the circuit court did not err, and we affirm Fate's assault and battery conviction.

### III. The Evidence Regarding Possession of a Firearm and Ammunition

Finally, Fate argues that insufficient evidence supports his convictions for possession of a firearm by a convicted felon and possession of ammunition by a convicted felon. Code § 18.2-308(A) provides that it is unlawful for "any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm or ammunition for a firearm." "Possession of a firearm may be actual or constructive." *Hall v. Commonwealth*, 69 Va. App. 437, 448 (2018). "Constructive possession may be established by 'evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and the character of the substance and that it was subject to his dominion and control.'" *Id.* (quoting *Logan v. Commonwealth*, 19 Va. App. 437, 444 (1994) (*en banc*)). Although "ownership or occupancy alone is insufficient to prove knowing possession of

[a firearm] located on the premises or in a vehicle," circumstantial evidence coupled with ownership or occupancy often establishes the constructive possession of such contraband. *Burchette v. Commonwealth*, 15 Va. App. 432, 435 (1992). "A person's ownership or occupancy of premises on which the subject item is found, proximity to the item, and statements or conduct concerning the location of the item are probative factors to be considered in determining whether the totality of the circumstances supports a finding of possession." *Watts v. Commonwealth*, 57 Va. App. 217, 233 (2010).

Naiesha testified that Fate grabbed the firearm and cocked it. Given her testimony, it was reasonable for the circuit court, sitting as fact finder, to conclude that Fate had actual *possession* of a firearm, even if the firearm did not belong to him and it was not recovered. *See Atkins v. Commonwealth*, 57 Va. App. 2, 23 (2010) (holding that "[p]ossession and not ownership is the vital issue"). Because the circuit court found Naiesha's testimony credible, we affirm Fate's conviction for possession of a firearm by a convicted felon. *See McCary*, 36 Va. App. at 41.

Regarding the ammunition, Fate had sole occupancy and control of a vehicle in which the ammunition was found. When Brown asked Fate if he had any weapons in the car, he responded that he had ammunition, demonstrating his awareness of its presence in the car. During his closing argument, Fate conceded that he could not deny the possession of ammunition because he knew there was "a high possibility the ammunition was in the car."

Fate nonetheless argues that the Commonwealth failed to establish constructive possession because he never identified *where* in the vehicle the ammunition was located. There is no requirement that the Commonwealth identify exactly where in the vehicle the ammunition was located, and Fate cites no legal authority to support his assertion. Moreover, contrary to Fate's argument, proving that he had "dominion and control" does not require the Commonwealth to prove that the ammunition was within Fate's "immediate wingspan." *Cf.*

- 9 -

*Wright v. Commonwealth*, 53 Va. App. 266, 274 (2009) ("A defendant may constructively possess an item or items in his residence even when he is not on the premises."). The evidence introduced at trial was sufficient for a reasonable fact finder to conclude that Fate constructively possessed the ammunition in the vehicle. Accordingly, we affirm his conviction for possession of ammunition by a convicted felon.

## CONCLUSION

Because the record contains sufficient evidence to support Fate's convictions for strangulation, assault and battery, and possession of a firearm and ammunition by a convicted felon, we affirm the circuit court's judgments.

*Affirmed.*